[No. B134135. Second Dist., Div. Five. July 13, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID VALENCIA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the portions starting with the heading of part III.A and concluding with the heading for part III.E.

140

## Counsel

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Mary Sanchez and Jim Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

## TURNER, P. J.—

### I. Introduction

Defendant, David Valencia, appeals after he was convicted of second degree murder; discharging a firearm into an inhabited dwelling; and grand theft of an automobile. (Pen. Code,[1] §§ 187, 246, 487, subd. (d).) Additionally, the jury found defendant personally used a firearm within the meaning of section 12022.5, subdivision (a)(1). Further, the jury found defendant personally discharged a firearm which caused death. (§ 12022.53, subd. (d).) These crimes all occurred on April 30 and May 1, 1998. These convictions and enhancement findings were returned in a trial and a retrial. Defendant contends there was insufficient evidence he possessed the requisite mens rea to support a grand theft conviction; he was prejudicially misled into rejecting a proffered plea bargain after the first trial; the prosecutor's rebuttal argument violated the due process clause of the Fourteenth Amendment; there was instructional error; and the section 12022.53, subdivision (d) enhancement must be reversed because at the time of the homicide it could not

---

[1]All future statutory references are to the Penal Code unless otherwise indicated.

enhance the crime of murder. In the published portion of this opinion, we discuss whether the section 12022.53, subdivision (d) enhancement may be added to a second degree murder sentence when the homicide occurred in 1998. We reject all of defendant's contentions and affirm the judgment.

## II. THE FACTS

The evidence concerning the car theft and the homicide, when viewed in a light most favorable to the judgment (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909; *People v. Marshall* (1997) 15 Cal.4th 1, 34 [61 Cal.Rptr.2d 84, 931 P.2d 262]), indicated that on April 30 or May 1, 1998, defendant, who was armed, broke into the Buick Riviera automobile of Cristiano Gutierrez. Defendant "broke the transmission" and drove the car without the need to use a key. Defendant drove the stolen car for five hours, making several stops.

Eventually, defendant encountered the decedent who was a prostitute. Defendant, who was accompanied by two other men, asked the decedent to get into the stolen car. Defendant said, "[L]et's go and take a cruise." The decedent refused. The decedent wanted defendant to go to a room. One of the occupants of the stolen car referred to the decedent as a "nigger whore." Defendant, who was seated in the stolen Buick Riviera, attempted to grab the decedent's hand. The decedent slapped defendant. Defendant then became mad and parked the stolen car. Defendant fired seven shots with a semiautomatic handgun into the motel room occupied by the decedent. The decedent was struck in the torso by a bullet. The decedent's liver was perforated by the bullet. The decedent remained in the hospital for nine days before dying. In the middle of the nine-day period of hospitalization before her death, the decedent developed a fever, apparently from an infection. She died as a result of the onset of adult respiratory distress syndrome and probable sepsis which resulted from "the gunshot wound that she received."

Eventually, the police observed defendant driving the stolen Buick Riviera. When the police began to follow the stolen car, defendant at first refused to pull over. Eventually, after a brief pursuit, the car struck a building. Defendant fled. He was arrested the next day hiding in some bushes near his home.

## III. Discussion

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

 Defendant argues that the section 12022.53 enhancement must be reversed because it did not apply at the time of the shooting in this case on either April 30 or May 1, 1998, when he committed the murder. In 1998, at the time of the commission of the killing in this case, section 12022.53, subdivision (a) provided in relevant part: "(a) This section applies to the following felonies: [¶] (1) Section 187 (murder)." In 1998, when the present homicide occurred, section 12022.53, subdivision (d) stated: "Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury, *as defined in Section 12022.7,* to any person other than an accomplice, shall be punished by a term of imprisonment of 25 years to life in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony." (Italics added.) When defendant shot the decedent to death, an essential element of the firearm use enhancement at issue required the victim to suffer "great bodily injury, as defined in Section 12022.7." (§ 12022.53, subd. (d).)

Defendant contends the express language of section 12022.7 precludes its application to a murder charge. Section 12022.7, subdivision (a) provides, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he or she is convicted." Defendant reasons the term "great bodily injury" in section 12022.7, subdivision (a) includes death. Defendant contends that "infliction of great bodily injury" is necessarily an element of murder. More to the point though, section 12022.7, subdivision (f) explicitly states that the great bodily injury enhancement does not apply to the crime of murder. Section 12022.7, subdivision (f) states: "This section shall not apply to murder or manslaughter or a violation of Section 451 or 452." Hence, defendant argues, section 12022.7, subdivisions (a) and (f) by their terms exclude the crime of murder from the section's ambit. In this sense, defendant is correct; a section 12022.7 great bodily injury enhancement may not enhance a murder conviction. Because

---

*See footnote, *ante,* page 139.

section 12022.7, subdivisions (a) and (f) exclude murder from its scope of potential criminal liability, defendant concludes that he does not fall within the provisions of section 12022.53, subdivision (d), as it was in effect in 1998 when the decedent was shot to death. Stated differently, defendant theorizes that since section 12022.7 does not apply to murder, section 12022.53, subdivision (d) is therefore inapplicable in this case. Defendant bolsters this argument by pointing out that section 12022.53 was amended in 1998 to add the words "or death . . . ." (Stats. 1998, ch. 936, §§ 19, 19.5) after the reference to "great bodily injury" as appeared in the original enactment of that provision of law in 1997. (Stats. 1997, ch. 503, § 3.) However, when the language of section 12022.53 is examined in conjunction with appropriate legislative intent materials and the application of traditional standards of statutory construction, it is apparent that defendant's contention is unmeritorious.

■ This is an issue of statutory interpretation and we apply the following principles for construing statues articulated by the California Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent. [Citation.]" (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Further, the California Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' [Citation.]" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; *People v. Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) However, the literal meaning of a statute must be in accord with its purpose. The California Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute] . . . .' [Citation.]" (Accord, *People v. King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].) In *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to

conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ." (Accord, *People v. King, supra*, 5 Cal.4th at p. 69.) The Supreme Court has held: " 'The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers.' (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617].)" (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) Statutes are to be construed as a whole. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143 [43 Cal.Rptr.2d 693, 899 P.2d 79]; *Morris v. County of Marin* (1977) 18 Cal.3d 901, 910 [136 Cal.Rptr. 251, 559 P.2d 606].) Statutes must be construed to give effect to every word or provision, if legitimately possible. (*In re Clifford C.* (1997) 15 Cal.4th 1085, 1092 [64 Cal.Rptr.2d 873, 938 P.2d 932]; *Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 114 [172 Cal.Rptr. 194, 624 P.2d 244].) We construe a criminal statute as favorably to a criminal defendant as its language and the circumstances permit. (*People v. Franklin* (1999) 20 Cal.4th 249, 253 [84 Cal.Rptr.2d 241, 975 P.2d 30]; *In re Christian S.* (1994) 7 Cal.4th 768, 780 [30 Cal.Rptr.2d 33, 872 P.2d 574].)

While defendant's analysis has a superficial intellectual appeal, it is, with respect, without merit. To begin with, as enacted in 1997 and effective January 1, 1998, section 12022.53 explicitly applies to the crime of murder. Section 12022.53, subdivision (a)(1) states unequivocally that the new enhancement applies to the crime of murder. Also, the definitional language in section 12022.53, subdivision (d) indicates the enhancement applies when the discharge of the firearm has "proximately caused great bodily injury, as defined in Section 12022.7." Section 12022.7, subdivision (e) defines the term great bodily injury. Section 12022.7, subdivision (e) states, "As used in this section, 'great bodily injury' means a significant or substantial physical injury." This definitional language in section 12022.7, subdivision (e) was that referred to by the Legislature in section 12022.53, subdivision (d). Stated differently, the Legislature was defining great bodily injury in section 12022.53, subdivision (d) by reference to the definitional language in section 12022.7, subdivision (e). The Legislature's intent in this regard will become clear when committee reports and the Legislative Council's Digest are analyzed. Defendant does not dispute that the decedent, who died of a gunshot wound which perforated her liver, suffered great bodily injury within the meaning of section 12022.7, subdivision (e). The words selected by the Legislature are the best evidence of its intentions and section 12022.53, subdivision (a)(1) clearly indicates the enhancement is to apply in murder cases such as this one.

Putting aside the explicit reference to murder in section 12022.53, subdivision (a)(1), defendant is correct that there was an ambiguity in the law. A section 12022.7, great bodily injury enhancement may not be used to enhance the crime of murder. Section 12022.53, subdivision (d) relied on section 12022.7 to define the scope of the new firearm use enhancement. Section 12022.53, subdivision (d) does not explicitly refer to section 12022.7, subdivision (e). Rather, section 12022.53, subdivision (d) only refers to "Section 12022.7." If section 12022.7, subdivision (f), which excludes murder from its ambit, defined the scope of great bodily injury for purposes of the new firearm use statute, then section 12022.53 arguably could not enhance a murder charge. However, if section 12022.7, subdivision (e), which refers only to "significant or substantial physical injury" defined the scope of great bodily injury for purposes of section 12022.53, subdivision (d), then the new firearm use enhancement would apply to murder. (Again, this discussion of the statutory ambiguity disregards the explicit reference in § 12022.53, subd. (a)(1) to the crime of murder.)

However, such ambiguities are sometimes resolved by reference to legislative committee reports. In this case, legislative committee reports indicate the Legislature intended that the new section 12022.53 firearm use enhancement apply to the crime of murder. (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System, supra,* 6 Cal.4th at p. 826; *People v. Jones, supra,* 5 Cal.4th at p. 1146.) Section 12022.53 was introduced as Assembly Bill No. 4. When Assembly Bill No. 4 was originally introduced on December 2, 1996, the Legislative Counsel's Digest stated in pertinent part: "This bill would provide that, notwithstanding any other law, a person who is charged as a principal in the commission of an offense who . . . uses a firearm during the commission of specified felonies shall be punished by an additional term of 10 years in the state prison, to be imposed consecutive to the punishment prescribed for the felony . . . . If anyone was injured as a result of the firearm being discharged under those circumstances, the person would be punished by an additional term of 25 years to life in the state prison, to be imposed consecutive to the punishment prescribed for the felony." (Legis. Counsel's Dig., Assem. Bill No. 4 (1997-1998 Reg. Sess.) Dec. 2, 1996.) As in the final enactment of Assembly Bill No. 4, murder is one of the specified felonies in the initial version of the legislation. (Assem. Bill No. 4 (1997-1998 Reg. Sess.) as introduced Dec. 2, 1996, § 2.)

The first legislative committee report prepared for the Assembly Committee on Public Safety described the enhancement as follows: "Creates the following series of enhancements for commission of specified felony offenses: [¶] . . . [¶] . . . Twenty-five years to life where any person intentionally discharges a firearm so as to proximately cause the injury of another

person during the commission of specified felonies. [¶] . . . Applies the increased enhancements to the crime[] of murder . . . ." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 4 (1997-1998 Reg. Sess.) Apr. 8, 1997, p. 1.) On May 14, 1997, when Assembly Bill No. 4 was before the Assembly Committee on Appropriations, a report prepared for that date stated with reference to the 25-years-to-life enhancement, "Applies these enhancements to murder . . . ." (Assem. Com. on Appropriations, Rep. on Assem. Bill No. 4 (1997-1998 Reg. Sess.) May 14, 1997, p. 1.) Similar language to that appearing in these two reports was contained in other documents submitted to Assembly committees. (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 4 (1997-1998 Reg. Sess.) Apr. 8, 1997, p. 1 ["Applies the increased enhancements to the crime[] of murder . . . ."]; Assem. Com. on Public Safety, Rep. on Assem. Bill No. 4 (1997-1998 Reg. Sess.) Apr. 15, 1997, p. 1 [same]; Assem. Bill No. 4, 3d reading analysis (1997-1998 Reg. Sess.) as amended Apr. 28, 1997 ["Creates the following enhancements for commission of specified felony offenses: [¶] . . . [¶] 25-years-to-life where any person intentionally discharges a firearm so as to proximately cause great bodily injury to another person during the commission of specified felonies. [¶] . . . Applies the increased enhancements to the crime[] of murder . . . ."]; Assem. Floor Analysis, Concurrence in Sen. Amends. to Assem. Bill No. 4 (1997-1998 Reg. Sess.) as amended Aug. 4, 1997, p. 1 [as passed by the Assembly, this bill "created the following enhancements in specified felony offenses: [¶] . . . [¶] . . . Twenty-five-years-to-life where any person intentionally discharged a firearm so as to proximately cause GBI [great bodily injury] to another person during the commission of specified felonies."].) When Assembly Bill No. 4 was pending in the Senate, a report prepared by the Office of Senate Floor Analyses stated in pertinent part, "The bill further provides that: [¶] . . . [¶] . . . A defendant who, intentionally and personally, discharges a firearm causing great bodily injury in one of specified felonies be sentenced to an additional consecutive term of 25 years to life in state prison." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 4 (1997-1998 Reg. Sess.) as amended Sept. 10, 1997, p. 1.)

Further, the final version of the Legislative Counsel's Digest for Assembly Bill No. 4 which resulted in the 1997 adoption of section 12022.53 in its final version states in relevant part: "This bill would provide that, notwithstanding any other law, a person convicted of a specified felony who was charged as a principal in the commission of the offense and personally used a firearm during the commission of the offense shall be punished by an additional term of 10 years in the state prison, to be imposed consecutive to the punishment prescribed for the felony. If the firearm is intentionally discharged under those circumstances, the person would be punished by an

additional term of 20 years in the state prison, to be imposed consecutive to the punishment prescribed for the felony. If great bodily injury was proximately caused to any person other than an accomplice as a result of the firearm being discharged under those circumstances, the person would be punished by an additional term of 25 years to life in the state prison, to be imposed consecutive to the punishment prescribed for the felony." (Stats. 1997, ch. 503.) The Legislative Counsel's Digest for Assembly Bill No. 4 indicates that the enhancement was to apply when a person commits any specified felony which results in great bodily injury. As noted previously, murder is one of the enumerated felonies. (§ 12022.53, subd. (a)(1).) The Legislative Counsel's Digest for Assembly Bill No. 4 which accompanied the final version of the legislation is consistent with the argument posited by the Attorney General.

All of these committee reports and other documents referred to the 25-year-to-life enhancement being applicable to an accused who intentionally discharges a firearm when committing specified offenses. One of the specified offenses was murder. No committee report suggests that a murderer who intentionally discharges a firearm which causes great bodily injury may never be subject to be the 25-year-to-life enhanced sentence.

Further, defendant's analysis of section 12022.53, that great bodily injury is an element of the crime of murder and the language of section 12022.7, subdivision (a) thereby precludes a murderer from receiving the enhanced 25-year-to-life sentence, violates several important rules of statutory construction. As noted previously, statutes must be construed as a whole (*California Correctional Peace Officers Assn. v. State Personnel Bd.*, *supra*, 10 Cal.4th at p. 1143; *Morris v. County of Marin*, *supra*, 18 Cal.3d at p. 910) and effect given to every word or provision if possible. (*In re Clifford C.*, *supra*, 15 Cal.4th at p. 1092; *Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.*, *supra*, 29 Cal.3d at p. 114.) Defendant's analysis would require that the language in section 12022.53, subdivision (a)(1), which indicates the enhancement applies when a defendant is convicted of murder, be rendered meaningless. Defendant's construction would eliminate that crime, murder, from the scope of the 25-year-to-life enhancement provided for under section 12022.53, subdivision (d). We are not permitted to construe statutes so as to render such material provisions as the offenses to which an enhancement applies to have no meaning at all as defendant would have us do.

A final comment is in order in response to defendant's argument concerning the 1998 amendment which added "death" in addition to "great bodily injury" in section 12022.53 subdivision (d). In 1998, section 12022.53, subdivision (d) was amended in pertinent part to add the following italicized

language: "Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury, as defined in Section 12022.7, *or death*, to any person other than an accomplice, shall be punished . . . ." (Italics added.) Assembly Bill No. 105 (Reg. Sess. 1997-1998) was the statutory vehicle whereby the language "or death" was added to section 12022.53, subdivision (d). Section 27 of Assembly Bill No. 105 states, "The amendment to subdivision (d) of Section 12022.53 of the Penal Code is intended to be declaratory of existing law and to clarify that the enhancement in that subdivision applies to causing great bodily injury or death." (Stats. 1998, ch. 936, § 27.) A statement by the Legislature construing a prior enactment is not binding on the courts, which have the duty to construe statutes. However, a statement such as appears in section 27 of Assembly Bill No. 105, an uncodified provision of the enactment, is entitled to due consideration. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 [62 Cal.Rptr.2d 243, 933 P.2d 507]; *California Emp. etc. Com. v. Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702].)

The effort by the Legislature to clarify its prior enactment of section 12022.53, subdivision (d) is entitled to weight because it is consistent with the language and legislative history leading up to the 1997 adoption of section 12022.53, subdivision (d). The original enactment of section 12022.53, subdivision (d) in 1997 and the 1998 amendment all occurred during the 1997-1998 Regular Session of the Legislature. In other words, the 1998 amendment was adopted by the same group of legislators as those who originally enacted section 12022.53, subdivision (d). More to the point though, our previous analysis of section 12022.53, construed as a whole and as enacted in 1997, is controlling. Section 12022.53, subdivision (a)(1) unequivocally states that the enhancement applies to the crime of murder. That the Legislature later amended section 12022.53, subdivision (d) to specify that the enhancement must be applied when an enumerated offense is committed, and death results, adds little to the pertinent analysis. Accordingly, defendant's theory that he may not be subject to the 25-year-to-life sentence required by section 12022.53, subdivision (d) is without merit.

Nothing in this opinion should be construed to read that the section 12022.7 great bodily injury enhancement may apply to enhance a murder conviction. The express language of section 12022.7, subdivision (f) precludes the imposition of a great bodily injury enhancement to the sentence of a convicted murderer. All we are holding is that the great bodily injury language in section 12022.53, subdivision (d) refers to the definitional language in section 12022.7, subdivision (e).

## IV. DISPOSITION

The judgment is affirmed.

Grignon, J., and Armstrong, J., concurred.

A petition for a rehearing was denied August 14, 2000, and appellant's petition for review by the Supreme Court was denied November 1, 2000.