[No. B212054. Second Dist., Div. Eight. Dec. 28, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JAVIER FRAUSTO, Defendant and Appellant.

**COUNSEL**

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and G. Tracey Letteau, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RUBIN, Acting P. J.**—Defendant Javier Frausto appeals from his conviction of first degree murder and two counts of attempted premeditated murder. He contends insufficient evidence supports jury findings that, as to the attempted murder counts, he personally discharged a firearm causing great bodily injury or death. We reject defendant's argument but agree with him, as do the People, that the trial court erred in imposing three separate prior conviction enhancements and in calculating his presentence custody credits. We order the abstract of judgment amended and, as amended, affirm the judgment.

## PROCEDURAL BACKGROUND

Defendant was charged with first degree murder of Lynette Lucero and attempted premeditated murders of Jimmy Sigala and Julio Castro. The information also alleged as to each count the following enhancements:

—Personal use and personal discharge of a firearm (Pen. Code, § 12022.53, subds. (b), (c)).[1]

—Personal discharge of a firearm causing great bodily injury (GBI) or death to a nonaccomplice (§ 12022.53, subd. (d) (hereafter section 12022.53(d))).

—Three prior convictions pursuant to section 667, subdivisions (a) through (i).

By the time the case was submitted to the jury, the verdicts differed from the information in two respects, one material, the other not. Immaterially, the section 12022.53, subdivision (b) enhancement for personal *use* of a firearm was dropped, the prosecutor apparently content with arguing personal discharge of a firearm and personal discharge causing death/GBI, the more serious allegations. Of great significance, though, was that the verdict language for the death/GBI enhancement listed as to each count, "great bodily injury and death to Lynette Lucero," the murder victim. On the face of the verdict form, therefore, it was the death of *Lucero* that formed the basis for the enhancement in the attempted murder counts involving victims *Sigala* and *Castro*.[2] The jury found true the death/GBI enhancements as to each count. It also found true the lesser personal discharge enhancements. In a bifurcated proceeding, the trial court found true the prior conviction allegations.

Defendant was sentenced to a total of 214 years to life in prison, plus a consecutive term of 15 years, comprised of 5 years for each of the three prior convictions. The sentence included a separate, consecutive 25-year-to-life term on each count pursuant to section 12022.53(d). Defendant was given 464 days of presentence custody credits.

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357–358 [75 Cal.Rptr.3d 289, 181 P.3d 105]), the evidence established that in July 2007, victims Lucero and Sigala were next door neighbors on Alice Street in the Cypress Park area of Los Angeles;

---

[1] All future statutory references are to the Penal Code.

[2] The prosecutor *argued* to the jury that the injuries suffered by Sigala and Castro proved the section 12022.53(d) enhancements on the attempted murder counts involving Sigala and Castro, but the verdict form for all three offenses alleged only Lucero's death as the factual basis for the enhancement.

victim Castro was Sigala's daughter's boyfriend; Castro's brother, Ernesto, lived around the corner. Defendant lived about five blocks away.

On the night of July 4, 2007, Castro, Sigala, and Lucero were in front of Sigala's home watching fireworks. At about 1:00 a.m., Jim Guzman was walking through the alley behind Lucero's home toward a party when he saw defendant coming in his direction and carrying a gun wrapped in a T-shirt. Guzman knew defendant, primarily through one of defendant's brothers. Shortly thereafter, Lucero was fatally shot, and Sigala and Castro were wounded. Guzman was still at the party a little while later and unaware of the shooting when he saw defendant arrive.

Two Los Angeles Police Department officers who were first on the scene of the shooting saw three gunshot victims: a male with a neck wound was seated in the front yard (Castro); another male with a stomach wound was lying in a fetal position in the yard of Sigala's house (Sigala); and a female was lying in the driveway (Lucero). Castro's brother, Ernesto, told one of the officers that Castro said the victims were "chitchatting" when defendant "started tripping" and "shooting."

At trial, Castro testified he never saw the shooter who approached from behind; Castro only remembered being shot, passing out and then waking up in the hospital emergency room. But prior to trial, Castro had told his two brothers and one of the prosecutors that defendant was the assailant.

Castro's other brother, Miguel, testified that his brother, Ernesto, told him that Castro had been shot by someone named "Frausto or something like that." Castro told Miguel that Sigala was shot first; Lucero, second; and Castro, last.

## DISCUSSION

### A.  *Substantial Evidence Supports the Gun-use Enhancements*

#### 1.  *Introduction*

Defendant contends there was insufficient evidence to support the enhancements for personal discharge of a firearm causing death/GBI associated with the two attempted murder convictions because the factual basis of each enhancement was Lucero's death, not injury to Sigala or Castro, respectively. He does not challenge the enhancement on the Lucero murder count.

Although couched in terms of substantial evidence, at the heart of defendant's contention is the correct interpretation of a statute, section 12022.53(d). We start our analysis there.[3]

■   Section 12022.53(d) mandates a 25-year-to-life enhancement for the personal discharge of a firearm causing death or great bodily injury. The statute provides: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." Murder and attempted murder are expressly covered by the statute. (§ 12022.53, subd. (a)(1), (18).)

In its simplest form, defendant's argument is that there were three separate shootings: Lucero, Sigala and Castro. The verdict form states that for the Sigala and Castro shootings, it was the death of Lucero that formed the basis of the section 12022.53(d) enhancement. How could that be so, defendant asks rhetorically, since the shooting of Sigala preceded Lucero's murder, and the shooting of Castro came afterwards? Seizing on that part of section 12022.53(d) that requires death/GBI to occur "in the commission" of the felony, defendant argues Lucero's death did not occur during the commission of the attempted murder of either Sigala or Castro. We hold: (1) defendant's interpretation of the phrase "in the commission of" is unreasonably narrow and inconsistent with legislative intent; and (2) substantial evidence supports the findings that Lucero was killed *in the commission* of each of the attempted murders.

### 2.   *Standard of review*

■   Whether a defendant used or discharged a firearm in the commission of a qualifying offense is a question of fact. (*People v. Masbruch* (1996)

---

[3] By way of brief digression, we observe that unquestionably both Sigala and Castro suffered great bodily injury when they were shot by defendant. Each was hospitalized with gunshot wounds and Sigala was still hospitalized as of the time of trial. But for the mistake in the verdict form, defendant would not have even a colorable argument of insufficiency of the evidence to support the enhancements. The People do not argue that, because the verdict forms for two counts apparently reflect only a scrivener's error in putting Lucero's name in place of the names of the attempted murder victims, we should treat the verdicts as if they had expressly alleged great bodily injury as to Sigala and Castro. (Cf. *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272–1274 [90 Cal.Rptr.3d 559] ["carjacking" on verdict form did not nullify conviction for robbery as charged].) Accordingly, we do not address the point.

13 Cal.4th 1001, 1007 [55 Cal.Rptr.2d 760, 920 P.2d 705] (*Masbruch*).) We review the sufficiency of the evidence to support the enhancement according to accepted rules of appellate review: we view the record in the light most favorable to the prosecution and may not reverse the judgment if any rational trier of fact could have found the essential elements of the enhancement beyond a reasonable doubt. (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1057 [40 Cal.Rptr.3d 768].) As we have observed, though, our consideration of the sufficiency of the evidence in this case also requires us to construe the applicable statute. For this task, we apply a de novo standard of review and the usual rules of statutory interpretation. (*People v. Jones* (2001) 25 Cal.4th 98, 107–108 [104 Cal.Rptr.2d 753, 18 P.3d 674] (*Jones*).) ▆ We look first to the statutory language to determine the Legislature's intent; if the language is clear and unambiguous, there is no need for construction. Otherwise, the literal meaning of a statute must be in accord with the statute's purpose, and a statute may not be construed simply by seizing on an isolated word or sentence, but rather in context. (See *People v. Valencia* (2000) 82 Cal.App.4th 139, 144–145 [98 Cal.Rptr.2d 37] [construing § 12022.53(d)].) We may also consult legislative history. (*People v. Oates* (2004) 32 Cal.4th 1048, 1057–1058 [12 Cal.Rptr.3d 325, 88 P.3d 56] (*Oates*) [legislative history of § 12022.53].)

### 3. Defendant discharged a firearm causing Lucero's death in the commission of the attempted murders of Sigala and Castro

As the underlying facts are not in dispute on appeal—defendant shot, in order, Sigala, Lucero, and Castro at the same approximate time and in front of the Sigala residence—defendant argues that legally the shootings were separate acts. Thus, his argument continues, defendant did not kill Lucero in the commission of his attempted murder of either Sigala or Castro. In our view, defendant suggests an interpretation of the phrase "in the commission of" that is not borne out by the statutory language itself nor any legislative history, and is wholly unrealistic in light of the statutory purpose of section 12022.53. Fatal to defendant's position, the argument ignores Supreme Court precedent in this area and the persuasive authority of other appellate cases in analogous settings.

▆ The statutory scheme set out in section 12022.53, subdivisions (b) to (d) "distinguishes among different levels of involvement of a firearm in the commission of a crime." (*People v. Palacios* (2007) 41 Cal.4th 720, 725, fn. 3 [62 Cal.Rptr.3d 145, 161 P.3d 519] (*Palacios*); see also *People v. Brookfield* (2009) 47 Cal.4th 583, 589 [98 Cal.Rptr.3d 535, 213 P.3d 988].)[4] The most

---

[4] *Palacios* addressed whether section 654 precluded imposition of consecutive section 12022.53(d) enhancements for multiple convictions involving a single victim where the evidence showed that the defendant fired just one shot at the victim. The court concluded that

severe punishment is proscribed in subdivision (d), which imposes a 25-year-to-life sentence enhancement for "any person who, in the commission of [certain enumerated offenses], personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to any person other than an accomplice." Defendant does not quarrel with this finding in connection with his conviction of Lucero's murder, only the two attempted murder counts.

■ The stated legislative purpose of section 12022.53 is to impose progressively longer prison sentences on felons who use firearms in the commission of enumerated crimes. (*Palacios, supra*, 41 Cal.4th at p. 725.) It is to be construed expansively, not narrowly. For example, in *Palacios*, the statute was given a broad interpretation to negate application of section 654 to its operation. (*Palacios*, at p. 729.) In *People v. Le* (2006) 137 Cal.App.4th 54, 59 [39 Cal.Rptr.3d 741], the court construed "great bodily injury" in section 12022.53(d) broadly to include soft tissue damage. This construction is in keeping with the approach our Supreme Court has employed with other enhancements statutes. "[T]he legislative intent to deter the use of firearms in the commission of specified felonies requires that 'use' be broadly construed." (*Jones, supra*, 25 Cal.4th at p. 109 [construing § 12022.3, use of firearm or deadly weapon in the commission of specified sex offenses]; see also *Masbruch, supra*, 13 Cal.4th at p. 1006 [same].)

Neither side has directed us to any authority that addresses the precise issue before us: the interpretation of "in the commission of" in section 12022.53(d). The Attorney General argues that multiple enhancements in this case are authorized by *Oates, supra*, 32 Cal.4th 1048. Although not on all fours, *Oates* comes close and, we believe, a fair reading of our Supreme Court's opinion supports respondent's position. In *Oates*, the defendant was convicted of five counts of attempted premeditated murder when he shot twice into a group of five rival gang members. One shot missed completely; another shot hit one of the rivals in the leg. The trial court imposed concurrent and consecutive sentences for the various counts and several section 12022.53 enhancements, one or more under each of subdivisions (b), (c), and (d). Some of the enhancements were stayed.

---

in enacting section 12022.53, the Legislature intended to create a sentencing scheme unfettered by section 654. (*Palacios, supra*, 41 Cal.4th at p. 727; see also *Oates, supra*, 32 Cal.4th 1048 [§ 654 does not proscribe imposition of multiple § 12022.53(d) enhancements on counts involving multiple victims but a single act].) Defendant does not argue that section 654 precludes imposition of section 12022.53(d) enhancements for the three crimes here, crimes which also involve multiple victims.

The Court of Appeal modified the sentence, the details of which are not relevant to the issue before us. The People sought review, which the Supreme Court granted. Distilled to its material qualities, *Oates* held that section 12022.53 calls for multiple enhancements to be imposed when there are several victims but only one injury. (*Oates, supra*, 32 Cal.4th at pp. 1054–1055.) Much of the focus of the court's opinion dealt with interpreting the phrase "to any person other than an accomplice." (§ 12022.53(d).) Reviewing the statute and its legislative history, as well as comparing section 12022.53(d) to other statutes that use the word "victim," the court concluded that an enhancement must be imposed even though the person injured is not the victim of the crime in question. By way of example: D shoots at A and B, injuring only A. D is convicted of two counts of attempted murder. The section 12022.53(d) enhancement must be imposed on the B count as well. "Because the requirements of the subdivision (d) enhancement have been satisfied as to each of defendant's attempted murder convictions, subdivision (f) of section 12022.53 requires that the enhancement be imposed as to each conviction." (*Oates*, at p. 1056, italics omitted.)

The defendant in *Oates* made the same argument as defendant does here: one does not injure victim A in the commission of the crime against victim B. The *Oates* defendant argued, " '[I]n the instant case, it was only in the commission of one of the attempted murders that the discharge of a firearm proximately caused great bodily injury, i.e., the count involving the singularly injured victim.' " (*Oates, supra*, 32 Cal.4th at p. 1061.) The Supreme Court squarely rejected that assertion. "[W]hether an injury to a third person occurs 'in the commission of' a qualifying crime committed against an uninjured victim does not depend on whether a subdivision (d) enhancement is imposed with respect to a crime committed against anyone else (either the injured victim or another uninjured victim). Thus, defendant's focus on the statutory phrase, 'in the commission of,' is unavailing." (*Id.* at p. 1062.)

As we have observed, *Oates* is not squarely on point because the Supreme Court was not called upon to consider "in the commission of" in the context of a claim that the crimes were three separate acts. *Oates* assumed there was a single act of shooting into a crowd (although two bullets were fired). Our case—at least in the way defendant would like us to see it—involves three separate shootings, one after another, with three separate injuries, caused by three separate bullets. If *Oates* is not on all fours, "the fourth" is completed by a series of cases that expressly discuss "in the commission of" in the context of other enhancement statutes.

We first point out that, as a matter of statutory interpretation, identical terms in analogous statutes are to be construed in like manner. (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078]

[sexual assault statutes].) This is true in the construction of similar enhancement statutes. (*Masbruch, supra,* 13 Cal.4th at p. 1007.) In *Masbruch,* the Supreme Court relied on its earlier decision in *People v. Chambers* (1972) 7 Cal.3d 666 [102 Cal.Rptr. 776, 498 P.2d 1024], in concluding that section 12022.3, subdivision (a) (section 12022.3(a)) should be interpreted the same as section 12022.5. Both enhancement statutes use the phrase "in the commission of."[5] "Our decision in *Chambers* preceded the enactment of section 12022.3(a). However, the language of section 12022.5 construed in *Chambers* is substantially similar to that of section 12022.3(a). ■ 'Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction. [Citation.]' (*People v. Harrison*[, *supra,* at p. 329].)" (*Masbruch, supra,* 13 Cal.4th at p. 1007; see also *Jones, supra,* 25 Cal.4th at p. 109.) Significantly, section 12022.53(d), the statute in question here, was enacted in 1997, one year after the Supreme Court construed "in the commission of" in *Masbruch.* (Stats. 1997, ch. 503, § 3, p. 3135.)

■ We now turn to the meaning of "in the commission of" in section 12022.53(d) and then apply that meaning to the facts of the present case to determine whether there was substantial evidence that the killing of Lucero took place *in the commission of* the attempted murders of Sigala and Castro. Repeatedly we find that "in the commission of" has been given an expansive, not a tailored meaning. For example, in *Masbruch,* the defendant argued he did not use a gun in the commission of a sexual assault "because he displayed it only at the outset of his criminal activity, approximately one hour before he committed the sex offenses, and he left [the victim] several times during the interim to commit crimes in other parts of the house." (*Masbruch, supra,* 13 Cal.4th at p. 1006.) The Supreme Court used a visual metaphor to reject the defendant's argument: "In considering whether a gun use occurred, the jury may consider a 'video' of the entire encounter; it is not limited to a 'snapshot' of the moments immediately preceding a sex offense." (*Id.* at p. 1011.) The jury was not required to find that the victim had an awareness of the gun at every minute of criminal activity in order for the gun to be used in the commission of various offenses. (*Id.* at p. 1012.)

---

[5] Section 12022.3 provides in part: "For each violation of [certain enumerated sex offenses] and in addition to the sentence provided, any person shall receive the following: [¶] (a) A 3-, 4-, or 10-year enhancement if the person uses a firearm or a deadly weapon in the commission of the violation."

Section 12022.5 provides in part: "(a) Except as provided in subdivision (b), any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

Analogy to the felony murder statutes was the lynchpin of the analysis in *Jones, supra,* 25 Cal.4th 98, in which the court concluded that the use of a deadly weapon within the meaning of section 12022.3 occurs "in the commission of" the specified sex offense "if it occurred *before, during, or after* the technical completion of the felonious sex act." (*Jones,* at p. 110.) The court reasoned that under the felony-murder provisions, a murder may have been committed in the perpetration of a felony "if it occurred after the felony, e.g., during the attempt to escape or for the purpose of preventing discovery of the previously committed felony."[6] (25 Cal.4th at p. 109.) "We long ago rejected the assumption 'that to bring a homicide within the terms of section 189 . . . , the killing must have occurred "while committing," "while engaged in," or "in pursuance" of the named felonies, and that the killing must have been "a part of" the felony or attempted felony "in an actual and material sense." ' [Citation.]" (*Id.* at pp. 108–109.) Determining whether a killing occurred during the commission of a felony "is not ' "a matter of semantics or simple chronology." ' Instead, 'the focus is on the relationship between the underlying felony and the killing.' [Citation.]" (*Id.* at p. 109.) The court concluded that the Legislature was aware of the "long-standing judicial construction of the phrase 'in the commission of' as used in other Penal Code statutes and intended to incorporate it. We conclude that the phrase 'in the commission of' has the same meaning for the purposes of Penal Code sections 12022.3, subdivision (a), and 667.61, subdivision (e)(4), as it does under the felony-murder provisions." (*Ibid.*)

A similarly expansive reading of the phrase "in the commission of" has been adopted by courts construing enhancements under section 12022.5 (personal use of a firearm "in the commission of a felony"). For example, in *People v. Taylor* (1995) 32 Cal.App.4th 578 [38 Cal.Rptr.2d 127], the defendant and a female companion used a ruse to gain entry to the victim's home. Suspicious, the victim called a neighbor who was also a police officer. When that officer arrived at the victim's home, the defendant hid in nearby woods. The officer asked the victim to detain the woman while the officer searched for the defendant. After the officer left, the defendant returned to the house, pointed a revolver at the victim and ordered him to release the woman. The victim complied. The issue was whether the burglary was still in progress for purposes of determining whether the defendant used a firearm in the commission of that offense within the meaning of section 12022.5, subdivision (a). The court held that it was, reasoning "that for purposes of applying a firearm use enhancement, theft crimes such as robbery, burglary, and receiving stolen property continue beyond the time of the physical

---

[6] Section 189 defines first degree murder as, among other things, murder "committed in the perpetration of, or attempt to perpetrate," a specified felony. Among the special circumstances listed in section 190.2 is murder committed "while the defendant was engaged in" specified felonies. (§ 190.2, subd. (a)(17).)

conduct constituting the offense until the perpetrator has reached a place of temporary safety. Accordingly, one who employs a firearm at any time on the continuum between the initial step of the offense and arrival at a place of temporary safety is subject to the enhancement. [Citation.] . . . Thus, we hold that, for purposes of section 12022.5, the use of a firearm during escape from the crime scene is a use during the commission of the crime. [Citations.]" (*Taylor*, at p. 582.)

*People v. Alvarado* (2001) 87 Cal.App.4th 178 [104 Cal.Rptr.2d 624] (*Alvarado*) is also instructive. The issue in that case was whether a rape occurred in the commission of a burglary for the purpose of a section 667.61, subdivision (e)(2) enhancement. The court rejected the defendant's contention that the rape did not occur *during* the commission of the burglary because the elements of burglary (entry with the intent to commit theft or any felony) were complete at the time of the rape. *Alvarado* relied on the same felony-murder statutes at issue in *Jones*. *Alvarado* also observed that the California Supreme Court "has repeatedly rejected interpretations that would place technical limits on the scope of the phrase or require a strict causal relationship between the underlying felony and the homicide. Instead, the court has consistently held that a homicide is committed *in the perpetration of* a felony if the killing and felony are parts of 'one continuous transaction,' and this transaction may include flight after the felony to a place of temporary safety. [Citations.]" (*Alvarado*, at pp. 188–189.) Under the defendant's interpretation of section 667.61, the enhancement would apply "only when the burglar is in the process of entering a structure. Simply stating this theoretical scenario exposes defendant's interpretation as patently absurd. Indeed, we cannot realistically imagine, and defendant does not suggest, how his interpretation would ever apply, especially given the fact that 'an entry occurs for purposes of the burglary statute if any part of the intruder's body, or a tool or instrument wielded by the intruder, is "inside the premises." [Citations.]' [Citation.]" (*Alvarado*, at p. 187.)

█ We agree with each of these courts and conclude that the phrase "in the commission of" in section 12022.53(d) has the same meaning as identical or equivalent language in sections 667.61, 12022.3, 12022.5 and the felony-murder statutes. Thus, a firearm is discharged "in the commission of" a felony within the meaning of section 12022.53(d) if the underlying felony and the discharge of the firearm are part of one continuous transaction, including flight after the felony to a place of temporary safety. *Jones* teaches that "in the commission of" is not the same as "while committing," "while engaged in," or "in pursuance." Temporal niceties are not determinative and the discharge of a gun before, during, or after the felonious act may be sufficient if it can fairly be said that is was a part of a continuous transaction. For the same reason that chronology is not a determining factor, the number

of bullets used in a shooting is not dispositive when the rounds fired can fairly be said to be part of a continuous transaction.

■■■ Here, the jury found true the allegation that "in the commission of the [attempted murders of Jimmy Sigala and Julio Castro] the defendant . . . personally and intentionally discharged a firearm . . . which proximately caused great bodily injury and death to LYNETTE LUCERO within the meaning of . . . section 12022.53." A reasonable trier of fact could find that the shootings were part of one continuous transaction. Sufficient evidence supported either a theory that defendant shot all three victims because he harbored some malice toward them all or that he shot one or more to eliminate witnesses to the principal killing, thus assisting in the escape that he in fact effected. Under these circumstances, it is immaterial that defendant may have fired at Lucero before or after firing at the others.

B. *Separate Enhancements Were Improperly Imposed for Three Prior Convictions*

Defendant contends, and the People concede, that the three prior convictions alleged pursuant to section 667, subdivision (a)(1) cannot support separate enhancements because they were the result of a single prior proceeding. We agree.

■■■ Pursuant to section 667, subdivision (a)(1): "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction *on charges brought and tried separately.* . . ." (Italics added.) To satisfy the "brought and tried separately" requirement, "the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris* (1989) 49 Cal.3d ˙131, 136 [260 Cal.Rptr. 288, 775 P.2d 1057]; see *People v. Wagner* (1994) 21 Cal.App.4th 729, 734 [26 Cal.Rptr.2d 383].) Here, the three prior convictions (two voluntary manslaughters and one robbery) all occurred in case No. BA067831. Accordingly, it was error to impose more than one five-year enhancement pursuant to section 667, subdivision (a)(1).

C. *Presentence Custody Credit Was Miscalculated*

Defendant contends and the People agree that defendant was entitled to 466 days of presentence custody credit, not the 464 actually awarded. Defendant was arrested on July 15, 2007, and was sentenced on October 22, 2008. He remained in custody that entire time—a total of 466 days. Thus, he was entitled to credit for those days. (§ 2900.5.)

## DISPOSITION

The trial court is ordered to correct the abstract of judgment to reflect the following modifications, and to forward it to the Department of Corrections and Rehabilitation: (1) imposition of only one five-year enhancement under section 667, subdivision (a)(1); and (2) an award of 466 days of presentence custody credit. As so amended, the judgment is affirmed.

Flier, J., and Mohr, J.,* concurred.

On January 13, 2010, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 14, 2010, S179935. George, C. J., did not participate therein.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.