Filed 12/21/15  P. v. Mackey CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEMARIE RASHAD MACKEY,<br><br>    Defendant and Appellant. | B255595<br><br>(Los Angeles County<br>Super. Ct. No. PA077059) |

        APPEAL from a judgment of the Superior Court of Los Angeles County,
Hayden Zackey, Judge.  Affirmed in part, reversed in part and remanded with directions.

        Janet Uson, under appointment by the Court of Appeal, for Defendant and
Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney
General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and
Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Demarie Rashad Mackey was convicted by a jury of three counts of robbery. Mackey challenges the denial of his motion to suppress evidence and contends there were multiple evidentiary and sentencing errors. We reverse the conviction on one count of robbery, vacate the sentence and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Jury Trial*

According to the evidence presented at trial, at 10:35 a.m. on May 25, 2013, an African American man entered the Bank of America in Newhall armed with a handgun. He was wearing a nylon stocking mask and a dark hooded sweater bearing an insignia. The man approached two tellers, Sharouk Qumsieh and Alan Rosas, and demanded at gunpoint that they empty the contents of their money drawers into a dark bag he was carrying. The tellers complied and surreptitiously inserted electronic tracking devices inside the bundles of cash placed in the bag.[1] The assailant left the bank with the bag full of money—$1,700.00 from Qumsieh and $17,828.56 from Rosas—and two tracking devices. One of the devices was later found on the ground outside the bank.

At approximately 10:38 a.m. the same day, Los Angeles County Sheriff's Deputy Barnaby Ortega was notified by dispatch of the bank robbery and ensuing search for the suspect. Twelve to fifteen minutes later, Ortega was advised that another deputy had pulled over a red Toyota Camry on the Antelope Valley Freeway. Ortega arrived within a few seconds; at least three other patrol cars had already responded to the scene. Mackey, the driver and sole occupant of the Camry, was still inside the car. Following Mackey's arrest, Ortega searched the Camry and found a black bag containing bundled cash, a pellet gun, pantyhose and a black hooded sweater bearing a "DC" emblem. An electronic tracking device was concealed inside the cash recovered from the Camry.

---

[1] A video recording of the robberies from the bank's surveillance cameras was played for the jury.

In an interview with sheriff's detectives, Mackey admitted he had committed the robberies and explained how he had collected the pellet gun, panty hose and clothing he had used in the crimes.[2]

2. *The Defense*

Neither Mackey nor other witnesses testified in his defense.[3] The defense theory, presented through cross-examination and by argument, was mistaken identity.

3. *The Verdict and Sentencing*

The jury found Mackey guilty of the three robberies. In a bifurcated proceeding, the trial court found true the prior conviction enhancement allegations that Mackey had suffered two prior serious felony convictions within the meaning of Penal Code section 667, subdivision (a)(1), and two prior serious or violent felony convictions within the meaning of the "Three Strikes" law (Pen. Code §§ 667, subds. (b)-(j); 1170.12) and had served two prior prison terms for felonies (Pen. Code, § 667.5, subd. (b)).

The trial court sentenced Mackey to an aggregate state prison term of 70 years to life: On count 2, the court imposed an indeterminate term of 25 years to life for the robbery of Qumsieh, plus 10 years for the two five-year enhancements pursuant to section 667, subdivision (a)(1); on count 3, the court imposed a consecutive term of 25 years to life for the robbery of Rosas, plus 10 years for the two five-year enhancements. The court stayed sentence on count 1, the robbery of Bank of America, and on the two one-year prior prison term enhancements.

---

**2**    Prior to being questioned, Mackey was advised of his right to remain silent, to the presence of an attorney and, if indigent, to appointed counsel. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].) Mackey does not challenge the admission of his statements in this appeal.

**3**    The sole evidence Mackey introduced was a photograph of him taken after his arrest.

# DISCUSSION

1. *The Motion to Suppress Was Properly Denied*

   a. *The suppression hearing*

Prior to trial, Mackey filed a motion to suppress the evidence that had been seized from his car, asserting an improper warrantless search. (Pen. Code, §1538.5.) At the suppression hearing, Detective Kevin Forcier, assigned to investigate the robberies, testified he had encountered the electronic tracking device used by the Newhall Bank of America on 30 to 40 occasions in his law enforcement career. Forcier explained when the tracking device is activated, it triggers an alarm at the sheriff's department, which alerts the desk personnel that the device is transmitting information to the department's computer system. Once the desk personnel log onto the department's system, they receive updates every six seconds of the tracker's changing location. The personnel broadcast this information to the deputies in the field.

Alfred Aguilera, one of the sheriff's deputies in the field, heard a 10:38 a.m. radio dispatch of the Bank of America robbery. According to early reports from either the robbery victims or informants, the suspect was an African American man wearing a black sweatshirt and driving a white Ford Explorer. A later report placed the suspect in a red Ford Mustang.

Aguilera began driving to the Bank of America, but changed direction when advised by radio dispatch that an electronic tracking device inside the suspect's vehicle was transmitting its speed and course of travel. Aguilera started following the route of the vehicle in his patrol car by listening to radioed updates of the vehicle's changing location. He drove on surface streets and then entered the Antelope Valley Freeway going north. When Aguilera was near the Sand Canyon exit at approximately 10:53 a.m., he heard a radio dispatch that the suspect's vehicle was slowing down on the freeway. "Almost instantly," Aguilera came upon a traffic stop, where another deputy had pulled over the red Toyota Camry driven by Mackey. At that point, Aguilera heard an update that the tracking device showed the suspect's vehicle had stopped moving. Mackey was

4

removed from the car and arrested. Inside the Camry Aguilera saw, in plain view, the bag of money, handgun, gloves and hooded sweater. A further search followed.

Mackey did not testify at the suppression hearing. Following argument by counsel, the trial court denied the suppression motion, concluding the deputies had reasonable suspicion to detain Mackey in light of the electronic tracking device information upon which they reasonably relied.

b. *Standard of review*

In reviewing the denial of a motion to suppress evidence, we defer to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*Ibid.*) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*Ibid.*, *People v. Lomax* (2010) 49 Cal.4th 530, 563.) Whether relevant evidence obtained by assertedly unlawful means must be excluded is determined exclusively by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const. art. I, § 28, subd. (f)(2); see *People v Schmitz* (2012) 55 Cal.4th 909, 916.)

c. *The requirement of reasonable suspicion for a detention*

A detention occurs within the meaning of the Fourth Amendment when a law enforcement officer, by means of physical force or show of authority, in some manner temporarily restrains an individual's liberty. (*Brendlin v. California* (2007) 551 U.S. 249, 254 [168 L.Ed.2d 132, 127 S.Ct. 2400]; *People v. Zamudio* (2008) 43 Cal.4th 327, 341.) The officer may detain the person only if the officer has a reasonable, articulable suspicion the detainee has been, currently is or is about to be engaged in criminal activity. (*Terry v. Ohio* (1968) 392 U.S. 1..21 [20 L.Ed.2d 889, 88 S.Ct. 1868]; see *In re Tony C.* (1978) 21 Cal.3d 888, 893.) To satisfy this requirement, the police officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in

criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231; *United States v. Sokolow* (1989) 490 U.S. 1, 7 [104 L.Ed.2d 1, 109 S.Ct. 1581].) In evaluating whether that standard has been satisfied, we examine the "totality of the circumstances" in each case to determine whether a "particularized and objective basis" supports the detention. (*United States v. Cortez* (1981) 449 U.S. 411, 417 [66 L.Ed.2d 621, 101 S.Ct. 690].)

      d. *Mackey's detention was justified by reasonable suspicion*

The detention of Mackey, his subsequent arrest and search of his car were lawful only if the deputies had a reasonable, articulable suspicion that Mackey was involved in criminal activity. Mackey contends because the People failed to prove the electronic tracking device was functioning properly and thus reliable on the day of the bank robbery, the deputies otherwise had only a generalized description of the suspect and the suspect's vehicle which did not support reasonable suspicion.

It is true a vague or general description, standing alone, does not furnish reasonable grounds to detain any individual who falls within that description. (See *In re Tony C.*, *supra,* 21 Cal.3d, 888-898 [description of 'three male blacks' in day-old burglary report insufficient to justify detention of two African-American teenagers in vicinity of crimes]; *People v Collins* (1970) 1 Cal.3d 658, 660-661 [expressing "grave doubts as to the lawfulness of defendant's detention," where general description based on race, height and weight failed to distinguish him from substantial portion of local population].)

Here, however, Mackey concedes he was not detained merely because he met the generalized description of the robbery suspect—an African American man driving a red car. Before Mackey's detention, the deputies learned that when the suspect committed the robberies 18 minutes earlier, he triggered an electronic tracking device that was now inside his car. The device was transmitting the suspect's changing location, which was then radioed to the pursuing deputies every few seconds. Aguilera testified he relied on these dispatches to determine the suspect's route of travel through nearby surface streets and then onto the freeway. Shortly after Aguilera entered the freeway, the tracking

device indicated the suspect's car was slowing and then no longer moving. Almost immediately thereafter, Aguilera came upon a traffic stop involving Mackey, who had been pulled over by another deputy. The fact that the tracking device led the deputies to Mackey, who matched the description of the suspect, was sufficient basis for his detention.[4]

Contrary to Mackey's arguments, there was no requirement in this case to demonstrate that the electronic tracking device was accepted in the scientific community and functioning accurately and properly on the day of the robberies. Because the test under these circumstances is whether the deputies reasonably relied on the information to detain Mackey, and based on Detective Forcier's testimony concerning his lengthy personal experience with how the device operated in the sheriff's department, the deputies' reliance on it was reasonable. We are not persuaded by Mackey's assertion the device was essentially the equivalent of an untested confidential informant and its transmissions were akin to an unsubstantiated tip. The motion to suppress was properly denied.

2. *Evidentiary Issues*

During an evidentiary hearing, Mackey's counsel sought to preclude witnesses from referring to the electronic tracking device as "a tracker," arguing there had been no foundation under Evidence Code sections 402 and 403 and "*Kelly/Frye*" for the device to be admitted into evidence. The trial court rejected the request. During trial, and over foundational objections, the witnesses referred to the electronic tracking device as "a tracking device" and "bait." Mackey contends the trial court erred in failing to exclude these references arguing there was no showing the tracking device was accurate and

---

[4]     Appellant states in his opening brief on appeal, "the deputies relied on information provided by the tracker to stop and arrest appellant." He confirmed this in his reply brief: "deputies relied on the tracking information location and speed updates to locate, detain, and arrest appellant."

reliable under Evidence Code sections 402 and 403 and the *Kelly/Frye* test.[5]  He also argues there was no "competent" testimony the tracking device placed in the robbery suspect's bag was "actually found" in Mackey's car.  His contentions are without merit.

Even were the *Kelly* test applicable to this device, which we doubt, the scientific basis for, and reliability of, the device are not at issue.  The police stopped Mackey, and then confirmed their suspicion that he was the suspect with information indicating the device showed he had stopped at the location the device indicated.  To the extent the prosecution relied on the tracking device, it was solely as circumstantial evidence of Mackey's identity as the robbery suspect, by demonstrating the same device that was placed inside the money bag was later found in Mackey's car.[6]  As for Mackey's assertion there was no testimony to support this inference, he ignores Detective Staley's testimony there was "a surveillance device" hidden inside the money recovered from the Camry.

3.  *The Conviction for the Robbery of the Bank of America (Count 1) Is Reversed*

Mackey argues, and the People concede, the robbery conviction as charged in count 1 must be reversed because the named victim was the Bank of America.  Unlike the bank tellers Qumsieh and Rosas, who were the named robbery victims in counts 2 and 3, respectively, the bank cannot be a victim of a robbery as a matter of law.  It is not a person within the meaning of Penal Code section 211, which defines robbery as

---

[5]  *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*); *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013, 1014 (*Frye*).  However, in *People v. Soto* (1999) 21 Cal.4th 512, 515, footnote 3, the California Supreme Court explained that as *Frye* had been supplanted in federal jurisprudence, the foundational test formerly referred to as the *Kelly/Frye* test is now referred to as the *Kelly* test.

[6]  As the trial court explained to Mackey's counsel at the evidentiary hearing, instead of a tracking device, assume the teller had placed a blue rock inside a robbery suspect's bag of stolen money before the suspect fled from the bank.  Police officers then detain a motorist and retrieve from the car a bag containing money and a blue rock.  That it was the same blue rock that the teller had placed inside the bag of money is circumstantial evidence of the motorist's identity as the robbery suspect.

8

committed against a person. (See *People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064; *People v. Jordan* (1984) 155 Cal.App.3d 769, 782.) The verdict as to count 1 is reversed.

4. *The Trial Court Erroneously Imposed Separate Serious Felony Enhancements*

The trial court imposed two five-year enhancements under Penal Code section 667, subdivision (a)(1) after finding Mackey had suffered serious felony convictions for robbery and burglary on November 25, 2008 in Los Angeles Superior Court case number MA042066. The court imposed and stayed two one-year prior prison term enhancements under Penal Code section 667.5, subdivision (b) based on the same two convictions.

Mackey argues, and the People concede, the two prior convictions alleged pursuant to Penal Code section 667, subdivision (a)(1) cannot support separate enhancements because they were the result of a single prior proceeding. We agree.

Penal Code section 667, subdivision (a)(1) provides "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately . . . ." To meet this statutory requirement, "the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." (*In re Harris* (1989) 49 Cal.3d 131, 136; *People v. Frausto* (2009) 180 Cal.App.4th 890, 903.) Because Mackey's 2008 serious felony convictions for robbery and burglary were brought and tried together in the same proceeding, the court erred in imposing more than one five-year enhancement under Penal Code section 667, subdivision (a)(1).

Where, as here, two prior serious felony convictions cannot support separate five-year enhancements, one conviction can be the basis for a five-year enhancement under section 667, subdivision (a)(1) and the other can be the basis for a one-year enhancement under Penal Code section 667.5, subdivision (b). (*People v. Jones* (1993) 5 Cal.4th 1142, 1152-1153.)

9

## DISPOSITION

The conviction for count 1, the robbery of the Bank of America, is reversed. The sentence is vacated and the cause remanded for a new sentencing hearing consistent with this opinion. In all other respects the judgment is affirmed.

ZELON, Acting P. J.

We concur:

SEGAL, J.

BECKLOFF, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.