Filed 9/5/13  P. v. Willis CA2/8

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEROY WILLIS et al.<br><br>    Defendants and Appellants. | B240388<br><br>(Los Angeles County<br>Super. Ct. No. TA120996)<br><br>ORDER MODIFYING OPINION AND<br>DENYING PETITION FOR REHEARING<br>[There is no change in judgment] |

GOOD CAUSE appearing, the opinion filed August 6, 2013, in the above entitled matter is hereby modified as follows:

1.    On page 2, lines 5 and 6 of **FACTS AND PROCEDURAL HISTORY**, delete "heard a loud banging sound.  Duran then . . . ." so that it now reads, "Duran saw Thompson head toward the back door to the house, and then noticed Leroy Willis standing next to the door."

2.    On page 2, lines 6 through 7 of **FACTS AND PROCEDURAL HISTORY**, eliminate the sentence that begins "She ran downstairs" and ends "to phone 911" and replace it with the following"  "She ran downstairs and heard a loud banging sound, prompting her to run out the front door and proceed to a neighbor's house, where she phoned 911."

3.    On page 2, line 12 of **FACTS AND PROCEDURAL HISTORY**, insert a period after the phrase "marks on it", delete the remainder of that sentence, and add a new sentence that reads:  "According to the deputy, pry marks are 'any marks on either

the frame of the door or on the dead bolts or on the door itself; marks that are sustained from a tool used to force a door open'."

4. On page 3, line 14, after the sentence that ends "into the house," add the following new sentence: "Duran did not believe anything was missing from the house."

5. On page 4, add the following at the end of footnote 3: "Thompson separately contends that the prosecutor's comments concerning what constitutes an entry allowed the jury to convict him as an aider and abettor without proof that Willis ever entered the premises. Our analysis concerning this issue applies with equal force to that contention as well."

6. On page 7, lines 5 through 7, delete the two sentences that begin with "Yet, in the very next . . . ." and end with "the use of the word 'it'." and replace them with the following: "Yet, in the very next sentence the prosecutor said, 'I disagree with that.' Perhaps the ambiguity is the product of the use of the word 'that.'"

[end of modifications]

No change in judgment.

The petition for rehearing is denied.

_____

RUBIN, ACTING P. J.                 FLIER, J.                 GRIMES, J.

2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B240388 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA120996) |
| v. | |
| LEROY WILLIS et al. | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Laura R. Walton, Judge. Affirmed as modified.

Renee Rich, under appointment by the Court of Appeal, for Defendant and Appellant Jerry Lamar Thompson.

Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant Leroy Willis.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Leroy Willis and Jerry Lamar Thompson appeal from the judgments entered after a jury convicted them of residential burglary and found true an allegation that the crime was a violent felony because someone else was in the house at the time. We reject their contentions: that the trial court erred by not instructing the jury on the elements required to prove the violent felony allegation and that there was insufficient evidence to sustain that finding; and that the prosecutor committed misconduct when arguing to the jury. After modifying the judgment to correct certain sentencing errors, we affirm.

## FACTS AND PROCEDURAL HISTORY

Fifteen-year-old Kimberly Duran was asleep in the upstairs bedroom of her family's Lynwood home on the morning of August 19, 2011, when she was awakened by her barking dogs, looked out her window, and saw Jerry Lamar Thompson in the backyard, holding a bucket that belonged to the Duran family. Duran saw Thompson head toward the back door to the house, and then heard a loud banging sound. Duran then noticed Leroy Willis standing next to the door. She ran downstairs and out the front door, then went to a neighbor's house to phone 911. As Duran headed downstairs, the back door was closed. She continued to hear banging at the rear door of her house as she fled, but did not know whether that door ever opened before she exited.

A sheriff's deputy who responded to the 911 call saw that the back door of the Duran house was wide open. The door handles were broken and the dead bolt had pry marks on it, which indicated that a burglary tool had been used to force the door open.

Willis and Thompson were arrested nearby a short time later.[1] They were charged with one count each of first degree residential burglary, along with allegations that the

---

[1] Because there is no dispute concerning Thompson's and Willis's identity as the two men Duran saw at her back door that morning, we do not set forth the facts concerning the manner of their identification and arrest.

2

crime was a violent felony because someone other than them was present in the house during the commission of the burglary. (Pen. Code, § 667.5, subd. (c)(21).)[2]

In addition to the testimony of Duran and the deputy sheriff, there was evidence that Thompson had a prior conviction for first degree burglary and that Willis had a prior conviction for attempted first degree burglary. Willis testified that Thompson was his brother-in-law. According to Willis, as they were walking they saw four Hispanic males pointing at and heading toward them. Willis, who took prescription medication for panic attacks, believed the four men were gang members. Fearing the men intended to harm him, Willis, accompanied by Thompson, ran away, ending up in the back yard of the Duran house. While standing at the back door, Willis flashbacked to an incident where he had been wounded and his brother had been killed when shot at by gang members. Acting out of fear and anger, Willis said he hurled himself against the back door, causing it to burst open. He ran because he did not want to be accused of having tried to break into the house.

## DISCUSSION

1.    *Prosecutorial Misconduct Claims*

It is misconduct for a prosecutor to misstate the law during argument. (*People v. Otero* (2012) 210 Cal.App.4th 865, 870.) State and federal law differ on this issue. Under the federal constitution, misconduct occurs only if the improper comments so infected the trial with unfairness that a due process violation occurred. Under the California Constitution, it is misconduct to use deceptive or reprehensible methods to persuade the jury, but we will affirm unless it is reasonably probable that the result would have been more favorable to the defendant absent the misconduct. (*Ibid.*)

Appellants contend that the prosecutor committed two instances of misconduct during jury argument: First, by stating that the mere act of causing the door to open inward into the house was a sufficient entry to find a completed burglary had occurred;

---

[2]    All further section references are to the California Penal Code.

3

and second by telling the jury that he disagreed with defense counsel's correct statement about the jury's treatment of circumstantial evidence.  We take each in turn.[3]

       A.      <u>Argument Concerning Entry</u>

A burglary occurs when a person enters a building with intent to commit larceny or any felony.  (§ 459.)  Any entry, partial or complete, is enough.  (*People v. Garcia* (2004) 121 Cal.App.4th 271, 280 (*Garcia*).)  An entry occurs if any part of the intruder's body, or a tool or instrument he wields, is inserted inside the premises.  This includes penetrating the area behind a window screen, as well as by inserting a tool into a doorjamb in order to pry open a door.  (*Id.* at pp. 280-281.)

During his rebuttal argument, the prosecutor argued that appellants went beyond an attempted burglary because they took an "effective step [by] breaking down of the door . . . ."  The trial court overruled Thompson's objection that the prosecutor had misstated the law concerning entry.  The prosecutor then told the jury that "once the door broke, once the door was busted open, then that constitutes entry."

Appellants rely primarily on *Magness v. Superior Court* (2012) 54 Cal.4th 270 (*Magness*) for the proposition that merely causing a door to open inward into a house is not an entry for purposes of completing a burglary, making the prosecutor's statement misleading.  At issue in *Magness* was whether there was sufficient evidence to charge a defendant with burglary where he used a remote control to open a garage door but did nothing else.  The *Magness* court affirmed the Court of Appeal, which held there was insufficient evidence to do so because the mere act of causing the garage door to go up, without more, did not amount to an entry.  (*Id.* at p. 279.)  In doing so, the *Magness* court discussed *People v. Calderon* (2007) 158 Cal.App.4th 137 (*Calderon*), where the

---

**3**    Willis raises these issues in his appellate briefs, and Thompson joins in them. Although Willis did not object to the disputed remarks below, we reach the issues as to him for two reasons.  First, Thompson did object, and those objections were overruled, making a separate objection by Willis futile (*People v. Gamache* (2010) 48 Cal.4th 347, 373); and second, to forestall a habeas corpus petition claiming Willis received ineffective assistance of counsel.  (*People v. Williams* (1998) 61 Cal.App.4th 649, 657.)

defendant kicked in the victim's door, but, before he could go inside, the victim ran out the door with a knife in his hand. The trial court instructed the jury that an entry occurs when some part of the intruder's body, or an instrument under his control, penetrates the area inside the building's outer boundary. The *Calderon* court affirmed the judgment, stating that kicking in the door of a home constituted an entry.

The *Magness* court held that *Calderon* reached the correct result because the instruction given was correct and there was sufficient evidence to support a finding that an accomplice's foot had entered the residence due to his momentum. (*Magness, supra,* 54 Cal.4th at p. 276.) However, the *Calderon* court erred by reasoning that the door itself was an instrument under the defendant's control that penetrated the outer boundary of the building. (*Ibid.*) Instead, the door was part of the house's outer boundary, and was not something outside the house that was inserted inside the house. (*Id.* at p. 279.)

At first blush, it appears the prosecutor in this case misstated the law through a blanket assertion that merely breaking in the door was enough of an entry to constitute a burglary. However, appellants must show a reasonable likelihood that the jury understood or applied this remark in a manner contrary to the law. In conducting this inquiry, we do not lightly infer that the jury drew the most damaging, as opposed to the least damaging, meaning from the prosecutor's statement. (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1403.)

The disputed remarks at issue here occurred during the prosecutor's rebuttal argument. During his initial argument, however, the prosecutor told the jury that the legal meaning of the word 'enter' requires proof that "some part of the body penetrates the area inside the outer boundary of the house." The prosecutor told the jury to focus on the instructions concerning "outer boundary," and referred to the removal of a window screen as an example of a completed entry. He then argued that appellants went beyond the outer boundary of the Duran house, pointing to "the door frame that's cracked open with the dead bolt still in place; while you see, once again, another photo of the broken frame. That's the inner boundary of the door. [¶] And you see the lock here too, the lock off the hinges. This is all the inner boundary. Pry marks here, when the officer

5

testified, that means entry . . . . [¶] [¶] And to use another example, say if there was -- a door screen. If the defendant removed the door screen, that is a burglary because they penetrated the outer boundaries of the residence . . . ."

When the disputed remarks made during closing argument are both viewed in context with this more detailed explanation from the prosecutor's initial argument and then combined with the correct instructions the jury received on this issue, we believe that any reasonable jury would interpret the disputed remarks in light of the initial correct ones. Combined with the strong evidence against appellants – broken handles, pry marks, and a damaged door frame – we conclude there is no reasonable likelihood the jury misunderstood or misapplied the disputed comments and that a result more favorable to appellants was not reasonably probable. We apply the same analysis to conclude there was no federal due process violation.

B.      Comments Concerning Circumstantial Evidence

Thompson argued to the jury that when evaluating circumstantial evidence, it had to draw every inference that favored the defense unless the inference was unreasonable. During his rebuttal argument, the prosecutor said he would not "argue what [defense counsel] meant or what it is about circumstantial evidence and whether or not you have to put it in the light most favorable to the defense. I disagree with that. I do disagree with that and all that I'm going to ask you to do . . . ." At that point, Thompson objected that the prosecutor had misstated the law. The trial court overruled the objection and said the jurors had been read, and would also receive, a copy of the instructions on that issue. Appellants contend the prosecutor's statement that he disagreed about the drawing of favorable inferences was another misstatement of the law that amounted to misconduct.

In a case involving circumstantial evidence, the trial court must instruct that the jury is to draw from such evidence all reasonable inferences that favor the defendant. (*People v. Merkouris* (1956) 46 Cal.2d 540, 560-562.) The jury in this case was so instructed with CALCRIM Nos. 224 and 225. After Thompson objected to the prosecutor's remark, the prosecutor backed off from his statement and told the jury to

6

look at the two correct CALCRIM instructions when determining how to evaluate circumstantial evidence.

We conclude that the prosecutor's remarks were at most ambiguous. On the one hand, the district attorney said he would not argue with defense counsel's characterization of the law of circumstantial evidence. Yet, in the very next sentence the prosecutor said, "I disagree with it." Perhaps the ambiguity is the product of the use of the word "it." When faced with the defense objection, the trial court had the opportunity to specifically clarify the point but chose instead to overrule the objection and only re-refer the jury generally to the instructions which the jury would be receiving. Given the ambiguity of the remarks themselves and the trial court's statement to the jury, we conclude it is most unlikely that the jury misapplied the law. We therefore hold that even if misconduct occurred, it was harmless because without it a result more favorable to defendants was not reasonably probable. We apply the same analysis to conclude there was no federal due process violation.

2.      *Failure to Instruct the Jury on the Elements of the Violent Felony Allegation Was Harmless*

Section 667.5 describes numerous offenses that qualify as violent felonies, including any first degree burglary "wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).) A defendant found to have committed a violent felony under section 667.5 accrues fewer presentence conduct credits than are otherwise allowable – no more than 15 percent of his actual period of confinement. (§ 2933.1, subd. (c); *Garcia, supra,* 121 Cal.App.4th at p. 274.) If a defendant convicted of a violent felony served a prison term for a prior violent felony conviction that occurred less than 10 years earlier, his sentence must also be enhanced by a three-year term for each such prior conviction. (§ 667.5, subd. (a).)

The trial court in this case submitted the truth of the violent felony allegation issue to the jury. However, the trial court denied Thompson's request for an instruction on the

7

elements of that allegation. The trial court explained its decision by stating that it had researched the issue and found no such instruction because none was necessary. "[T]hat's usually because either a house is burglarized with no one absolutely there, or a house is burglarized with an individual present. . . . It's either one or the other, . . ." Appellants contend the trial court erred by not instructing the jury on the elements of the violent felony allegation.[4]

Appellants cite *Garcia, supra,* 121 Cal.App.4th at pages 277-280 for the proposition that the issue of whether a currently charged offense qualifies as a violent felony is for the trial court to decide. However, because the issue was submitted to the jury, they contend the trial court should have crafted an instruction concerning the elements of the violent felony burglary allegation. This error was compounded, they contend, because the verdict form simply asked the jury to find true or false "that during the commission of the burglary . . . a person was present," without clarifying that the person had to be someone other than them.

Respondent does not dispute appellants' contention that under *Garcia* the issue is one for the trial court, not for the jury. Instead, respondent cites decisions which hold that there is no constitutional right to a jury finding on sentence enhancement factors, points to the absence of authority requiring jury instructions on such issues, and contends that other instructions provided sufficient guidance to the jury. These contentions do not answer appellants' claim that once the trial court submitted the sentence enhancement issue to the jury, proper instructions on the elements of that enhancement were required.

More importantly, the parties have overlooked the holding in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326, where the court said that juries must decide sentence enhancement issues that increase the penalty for a crime beyond the prescribed statutory maximum punishment. As noted above, a true finding on a violent felony allegation can have two possible effects on a sentence. First, it can reduce the amount of

---

[4] This issue is raised by Thompson and joined in by Willis.

custody credits that may be earned.[5]  Second, it can tack an extra three years onto a burglary sentence if the defendant had a previous violent felony conviction.  Because the enhancement can increase the punishment otherwise meted out for burglary, it appears that under *Sengpadychith, supra,* at page 326, the issue was in fact one for the jury to decide.

We need not resolve that issue, however, because respondent treats the issue as one that was properly before the jury.  Nor need we decide whether instructions were required because even if we assume that the trial court erred by failing to instruct the jury on the elements of the violent felony allegation, its error was harmless.

We review the trial court's failure to instruct on the elements of an offense under the federal constitutional standard:  We review the entire record to determine whether it is clear beyond a reasonable doubt that a rational jury would have made the necessary findings that someone other than appellants was present in the Duran house during the commission of the burglary.  (*People v. Concha* (2010) 182 Cal.App.4th 1072, 1089.)  This review typically includes the strength of the prosecution's case, and the inquiry's primary focus is on the weight of the evidence.  Generally, the error is harmless if the omitted element was uncontested and supported by overwhelming evidence.  (*People v. Aranda* (2012) 55 Cal.4th 342, 367-368.)

There is no dispute as to who that "person present" was in this case:  it was Duran.  According to appellants, the error cannot be deemed harmless because there was sufficient evidence that she had left the house before the back door opened and a completed burglary occurred.  Although the issue we must resolve is whether the uncontroverted evidence overwhelmingly shows that Duran was present during the

---

[5]     The Garcia court was careful to limit its holding to that scenario, stating that "determining whether a defendant's current conviction for first degree burglary is a violent felony *for the purpose of calculating presentence conduct credits* is properly part of the trial court's traditional sentencing function.  (*Garcia, supra,* 121 Cal.App.4th at p. 274, italics added.)

9

commission of the burglary, underlying this is an issue of statutory interpretation.**6** We apply the usual sufficiency of the evidence rules to the evidentiary questions. (*People v. Frausto* (2009) 180 Cal.App.4th 890, 897 (*Frausto*).) As to the statutory interpretation issue, we exercise independent review and apply the usual rules of statutory construction. We first examine the statutory language to determine the Legislature's intent. If the language is clear and unambiguous, no construction is needed. If some ambiguity exists, the literal meaning of a statute must be consistent with the statute's purpose. Isolated words and sentences may not be used to construe statutory language, and the statute must be construed in context. (*Ibid.*) Identical terms in analogous statutes should be construed the same way. (*Id.* at pp. 899-900.)

The true nature of appellants' argument is found in their separate companion contention that there was insufficient evidence to sustain the jury's true finding on the burglary violent felony allegation: that Duran had fled the house before the door opened and an entry occurred, meaning she was not present during the commission of the burglary.

Appellants rely on *People v. Singleton* (2007) 155 Cal.App.4th 1332 (*Singleton*), which reversed a burglary violent felony enhancement because the undisputed evidence showed that the victim was at all times in a hallway of his apartment building, not in his apartment, when the break-in occurred. The Legislature's use of the phrase "present in" as opposed to "near" the residence meant that "the nonaccomplice cannot merely be near, at, or around the residence, but must be *in* the residence for the purposes of the statute." (*Id.* at p. 1338, original italics.)

Their reliance on *Singleton* is misplaced because that decision was expressly limited to the interpretation of what it means to be "present in the residence" under section 667.5, subdivision (c)(21). (*Singleton, supra,* 155 Cal.App.4th at p. 1336.) The issue in this case is not whether Duran was present in the residence. She was. The issue is whether she was present "during the commission" of the burglary. That phrase and

---

**6**     Appellants do not challenge the jury's finding that a burglary occurred.

10

other substantially similar ones appear in several Penal Code provisions and has been given an expansive reading.

The phrase "during the commission of" has the same meaning as "in the commission of." (*People v. Jones* (2001) 25 Cal.4th 98, 108, fn. 6 (*Jones*) [interpreting section 12022.3, subd. (a), which provides for sentence enhancement for using a firearm during the commission of certain enumerated sex offenses]; *People v. Contreras* (1997) 55 Cal.App.4th 760, 764 [no semantic difference between the two phrases].)

The *Jones* court held that the use of a deadly weapon within the meaning of section 12022.3 occurs in the commission of a sex offense "if it occurred *before, during, or after* the technical completion of the felonious sex act." (*Jones, supra,* 25 Cal.4th at p. 110, original italics.) The *Jones* court based its holding on felony-murder rule principles, where a murder is deemed to have been committed in the perpetration of a felony even if it occurred after the felony while trying to escape or conceal the crime. (*Id.* at p. 109.)

We applied this rationale in *Frausto, supra,* 180 Cal.App.4th 890, where we construed section 12022.53, subdivision (d), which provides for a sentence enhancement for discharging a firearm causing death "in the commission of" a felony. The defendant shot and killed one man and shot and wounded two others. He was convicted of one count of murder and two counts of attempted murder, and the jury found true section 12022.53 enhancement allegations as to each of the three shootings. On appeal, the defendant contended the enhancement could apply to only the murder victim because the evidence showed three separate shootings but the verdict form showed the jury based its findings for all three enhancements on the shooting of the murder victim. Because the murder victim was the second one shot, that firearm use could not have occurred during the commission of the first and third shootings, he contended.

Comparing the phrase "during the commission of" with similar language in other Penal Code provisions, we noted that our courts have always given them an expansive interpretation. (*Frausto, supra,* 180 Cal.App.4th at pp. 900-902.) After examining those decisions, we gave the phrase "in the commission of" in section 12022.53 an equally

11

expansive reading. So long as the underlying felony and the discharge of the firearm were part of one continuous transaction, it does not matter whether that discharge occurred before, during, or after the felonious act. (*Id.* at pp. 902-903.)

The same rationale applies here. The apparent purpose of the burglary violent felony enhancement is to impose additional sanctions against those who burgle a home when someone is actually at home. It would produce an absurd result to construe that provision to apply where the victim perceives that a break-in is occurring, but flees in the seconds or split-second before a technical entry has occurred. (Accord *People v. Heston* (1991) 1 Cal.App.4th 471, 476 [interpreting section 12022.4, which provides sentence enhancement to those who furnish a firearm during the commission of a felony in order to enable an accomplice to carry out the crime; rejecting as absurd literal interpretation urged by defendant that the statute did not apply because he furnished weapon before the robbery was complete].)

The evidence is undisputed that Duran was in the house at the moment appellants commenced their break-in and for some period of time while their efforts to enter were still underway. Even though she might have left the house before the actual entry occurred and the burglary was technically complete, she was still present in the house *during the commission* of the burglary. As a result, the failure to instruct the jury on the detailed elements of the burglary violent felony enhancement was harmless beyond a reasonable doubt because faced with this evidence, any rational jury would have found the allegation was true.

3.    *Substantial Evidence Supports the Finding on the Burglary Violent Felony Enhancement*

As noted above, appellants contend there was insufficient evidence to support the jury's finding that Duran was present in the house during the commission of the burglary. As just discussed, however, the evidence was undisputed that Duran was inside the house during the commission of the crime.

12

4.    *Correction of Sentencing Errors*

Appellants raise two claims of sentencing error:  (1)  they were awarded 231 days of pre-sentence custody credit, an amount that must be increased by one day because the trial court's calculation omitted the day they were sentenced; and (2)  the abstract of judgment must be amended to delete the imposition of a $20 DNA testing penalty assessment because that fine was not orally announced at the sentencing hearing. Respondent concedes these points and asks that we correct the judgment.  We will do so.

## DISPOSITION

The superior court is directed to prepare an amended abstract of judgment for each appellant stating that the award of pre-sentence custody credits is 232 days, and deleting the $20 DNA testing penalty assessment.  A copy of the amended abstract is to be sent to the Department of Corrections.  The modified judgment is affirmed in all other respects.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.

13